1

2

3

4              UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   NOEL ALLEN PRITCHETT,

8                    Petitioner,              No. C 05-0764 PJH (PR)

9      vs.                                    **ORDER DENYING PETITION
                                              FOR WRIT OF HABEAS**
10   MELVIN HUNTER,                           **CORPUS**

11                    Respondent.
                                        /
12

13          This is a habeas case filed pro se by a petitioner who is confined for treatment

14   pursuant to the California Sexually Violent Predators Act ("SVPA"), section 6600 *et seq.* of

15   the California Welfare and Institutions Code.  In its initial review order, the court dismissed

16   two issues as presenting only state law claims and issued an order to show cause as to the

17   remaining two issues.  Respondent has filed an answer and a memorandum of points and

18   authorities in support of it, and has lodged exhibits with the court.  Petitioner has responded

19   to the answer with a traverse.  Having reviewed the briefs and the underlying record, the

20   court concludes that petitioner is not entitled to relief based on the claims presented and

21   will deny the petition.

22                              **BACKGROUND**

23   **I.    Civil Commitment Proceedings**

24          The California Court of Appeal summarized the factual and procedural background

25   of the civil commitment proceedings in its opinion affirming the judgment on direct appeal:

26               Pritchett was named in a petition for SVP commitment in March
                 2002.  Finding probable cause to believe he was likely to engage in
27               sexually violent predatory criminal behavior upon his release from custody,
                 the trial court set the petition for trial.  (See § 6602.)  The parties waived
28               their right to a jury.

**United States District Court**
For the Northern District of California

A.    PREDICATE OFFENSES

1.    First Predicate Offense

On July 3, 1992, Pritchett and two other Navy men were visiting the home of their superior officer for the holiday weekend.  The next day, after consuming alcohol with the other men, Pritchett went to the room of his host's two-year-old daughter (hereafter, victim one).  Victim one's mother later found him lying on victim one's bed, with victim one on her back and her legs spread apart.  Pritchett's hand was under the girl's diaper, rubbing her vagina.  When he noticed the mother had entered the room, Pritchett removed his hand from the diaper and started pointing to and naming the child's body parts.  The mother changed the diaper and observed redness around victim one's vagina.  Later victim one complained that "my peeper hurts" and that one of the Navy men "would not leave my peeper alone."  On July 7, 1992, Pritchett admitted to investigating officers that he had placed his fingers in victim one's diaper and fondled her vagina.  He could not explain his actions.

The following August, Pritchett pled guilty to a felony charge of lewd acts with a child less than 14 years (Pen. Code, § 288, subd. (a)).  The court suspended imposition of sentence and granted him three years of formal probation, with the conditions that he participate in counseling or therapy as directed, not associate with minors unless in the company of a responsible adult who knew of his commitment offense, register as a sex offender under Penal Code section 290, and totally abstain from the use of alcohol.

2.    Second Predicate Offense

While still on probation in February 1992, Pritchett moved in with his half-brother Michael, Michael's girlfriend, and their two-year-old son (hereafter, victim two).  Pritchett moved out in November 1993.  [Footnote omitted.]

In 1996, victim two underwent counseling for exhibiting sexually inappropriate behavior and advised a family member that "Uncle Noel" let him watch videos of girls kissing and played with his "pee pee."  When confronted by law enforcement, Pritchett admitted that while under the influence of alcohol, he played an X-rated video in front of victim two.  He also admitted that he fondled the boy's genitals on perhaps four to six occasions and orally copulated him two or three times.

In October 1996, Pritchett pled guilty to two counts of felony lewd acts with a child (Pen. Code, § 288, subd. (a)), with an enhancement for a prior serious felony conviction (Pen. Code, § 667, subd. (a)).  Pritchett was sentenced to state prison for 11 years.

B.    PEOPLE'S EXPERT TESTIMONY

1.    Dr. Fricke

Alfred Fricke, a clinical psychologist, had worked as a SVP evaluator for the DMH for two years and had completed 20 evaluations. Dr. Fricke had conducted a SVP evaluation of Pritchett by reviewing his

2

United States District Court

For the Northern District of California

Department of Corrections and DMH files, court records, and police reports, as well as interviewing him for three hours.

Dr. Fricke testified that Pritchett's predicate offenses were violent, sexual, and predatory in nature. He opined that Pritchett suffers from the mental disorder of pedophilia. He also concluded that Pritchett is likely to commit predatory, sexual crimes in the future if released, and has a substantial impairment in his ability to control himself. Despite having been incarcerated, discharged from the Navy, placed on probation, and participating in counseling, Pritchett was unable to control himself and molested a two-year-old boy in a family setting. His potential victim pool includes both boys and girls, both inside and outside the family, and with children too young to avoid him.

In characterizing the nature of Pritchett's predicate offenses, Fricke distinguished between those who molest within the family unit, who could do so for complicated reasons such as anger at the wife or turning to the child for love, from those who molest relative strangers, who are more likely to be suffering pedophilia. Because victim one was a stranger, Pritchett's lewd act with her was predatory and violent. His sexual acts with victim two were also predatory, since Pritchett had not molested him due to any apparent family reason, but because of his pedophilia.

In evaluating the likelihood Pritchett would reoffend, Fricke performed a Static-99 sex offender recidivism risk assessment analysis (Static-99 test) and considered Pritchett's risk factors. Fricke found that Pritchett represented a 40 percent risk for committing a new sexual offense, although not necessarily a sexually violent predatory offense, within 15 years. He concluded that Pritchett posed a "substantial risk" of reoffending. When confronted with a February 2002 written evaluation, in which Fricke had characterized the likelihood that Pritchett would reoffend as a "borderline situation," he explained that he had described Pritchett's situation as "borderline" based on a standard of "more likely than not," that is, more than a 50 percent likelihood. The risk of Pritchett's reoffending was nevertheless "substantial," and based upon a substantial risk standard, his likelihood of reoffending was not marginal.

Dr. Fricke acknowledged that participation in group therapy could reduce the likelihood of Pritchett reoffending, and Pritchett appeared able to cooperate with treatment and probation. Nevertheless, Fricke believed Pritchett would likely reoffend. The counseling Pritchett received after his 1992 conviction had not stopped him from reoffending, and he violated the probation conditions precluding him from associating with minors alone and consuming alcohol. For a period of time he had also failed to register as a sex offender as required by Penal Code section 290. Due to Pritchett's past conduct and mental disorder of pedophilia, Fricke concluded, parole restrictions would not remove the risk Pritchett poses to the community.

2.    Dr. Jackson

Charles Jackson, a licensed psychologist, had completed over 400 SVP evaluations. Dr. Jackson performed a SVP evaluation of Pritchett, reviewing his Department of Corrections and DMH files, court records,

and police reports, and conducting a clinical interview with Pritchett for nearly two hours.

Like Fricke, Jackson opined that Pritchett met the statutory criteria for a SVP. Pritchett had been convicted of violent, predatory, sexual offenses on two offenses. The 1992 molestation of victim one involved not only substantial sexual conduct, but also duress due to the difference in their height, weight, and age. It had a predatory nature, because victim one was a "stranger" as defined by the Static-99 test. In addition, the subsequent molestation of victim two was sexually violent with an element of duress as well. It was also predatory: among other things, in babysitting victim two he was nurturing or promoting a relationship for the purpose of victimizing him, and he "groomed" victim two by showing him pornographic movies.

Jackson diagnosed Pritchett as suffering from pedophilia, nonexclusive type, with an attraction to both males and females. Additional diagnoses were alcohol abuse in remission and borderline personality disorder.

Jackson believed that Pritchett would reoffend in a sexually violent and predatory manner. A Static-99 test disclosed a moderate high risk for reoffending, and Jackson believed the risk was greater because Pritchett had victimized both a male and a female. Other risk factors included Pritchett's deviant preference for two-year-olds, the early onset of his behavior at the age of 20, his failure to complete sex offender treatment, his reoffending after treatment, his borderline personality disorder, and his manipulative behavior in telling evaluators different stories about his past. In addition, Jackson opined, Pritchett lacks insight into the nature of his mental illness, suggesting he will not be able to change his behavior.

C.   PRITCHETT'S TESTIMONY

Pritchett was called as a witness by the prosecution, and testified in the defense case as well.

When he moved into the home of his brother Michael, Pritchett testified, he informed Michael of the probation condition prohibiting him from being alone with children and advised that he should not babysit victim two. Pritchett's probation officer also informed Michael and his wife about the San Diego offense, and instructed them not to leave Pritchett alone with victim two. Within a couple of weeks, however, Pritchett was left to babysit victim two by himself. Pritchett felt obligated to babysit, because he was a family member living in Michael's home.

Pritchett did not enjoy being on probation. He felt like somebody was trying to control his life, and he did not like being watched. He admitted violating two of his probation conditions, which precluded him from being alone with minors and consuming alcohol. He claimed he consumed alcohol only after Michael and Kathy offered it to him. The pornographic movies he showed victim two, Pritchett claimed, belonged to Michael. He complied with the counseling condition, knowing he would go to prison if he did not stop molesting children.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pritchett's first molestation of victim two occurred less than two months before he left Michael's house - and about a month after he had completed his counseling for his molestation of victim one.  He again asked not to be left alone with victim two, because he wanted to stop abusing victim two but was afraid he could not stop.  He molested victim two again.  Despite his regrets about what he had done to victim one and the prospect of going to prison if caught, Pritchett was unable to stop himself from molesting victim two.

Pritchett agreed he has the mental disorder of pedophilia.  He claimed, however, that he did not molest victim one or victim two due to any sexual attraction to children and obtained no sexual gratification from the acts.  Instead, Pritchett asserted, he acted out of a desire for love and acceptance, because throughout his childhood he had been pushed aside by adults.  While adults do not want to listen to him, Pritchett explained, children are less judgmental.  Pritchett now realizes it is inappropriate to seek love and acceptance from children to the exclusion of adults.

If released, Pritchett offered, he would not put himself in the position of being alone with minor children, would comply [with] all the terms of his parole, and would even pay for a treatment program himself.  Pritchett believed that while in prison he had "come to terms" with his past behavior and would be honest with himself and his family.

D.     DEFENSE EVIDENCE

1.     Pritchett's Mother

Pritchett's mother, Floy Colleen Williams, testified that Pritchett and Michael were raised as brothers.  She and Michael discussed Pritchett's San Diego conviction before Pritchett moved in.  Victim two was a "friendly, affectionate child" who "was just always all over" Pritchett, had a "friendly relationship" with him, and related to "Uncle Noel" as a family member.  Williams did not suspect anything unusual had happened between Pritchett and victim two.

2.     Dr. Coleman

Dr. Lee Coleman, a psychiatrist for 30 years, had opined over 20 times on forensic psychology and the diagnosis of mental disorder and risk prevention in SVP cases, including the accuracy or legitimacy of the diagnostic methods by which such risk is assessed.

Coleman opined that "pedophilia" as a "diagnosis" is improper and fraudulent use of psychology.  Pedophilia is not an expert finding, he explained, but merely a description of behavior, lending a false air of expertise to the opinion.  In addition, Coleman asserted that the resort of mental health professionals to certain "tools" renders them worse than laypersons at forming opinions.  Tools such as the Static-99 test to predict human behavior are faulty and of little value since they rely on sets of data collected by several different groups whose research, methodology, and criteria may vary.  Thus, in Coleman's opinion, the Static-99 test is confusing, distracting, and intellectually dishonest.

**United States District Court**
For the Northern District of California

Coleman acknowledged that Pritchett's history of sex crimes fit the definition of pedophilia, although a diagnosis of mental disorder could not be based simply upon criminal conduct.  Coleman also agreed that one who has recurrent fantasies or actually commits sex acts with two or three-year-old children has something mentally wrong with them.  In obvious situations, lay people can predict future behavior and do not require an expert to make such predictions.

3.    Dr. Wornian

Larry Wornian, a licensed psychologist with a doctorate in counseling psychology, testified as an expert in the assessment and treatment of sex offenders.  His experience included working as a staff psychologist at San Quentin Prison for over two years, running a program providing assessment and treatment for incest offenders, preparing Penal Code section 288 evaluations, and serving as a principal at the sex offender treatment program at the Crossroads Psychotherapy Institute (Crossroads).  He likened Crossroads to the treatment program for SVP's at Atascadero State Hospital.

Dr. Wornian reviewed the evaluation reports prepared by Fricke and Jackson, as well as Pritchett's DMH records.  Although he did not perform an assessment of Pritchett, Wornian believed Pritchett would qualify for the Crossroads program.  Men who molested two and three-year-olds are being treated on an outpatient basis at Crossroads.  Based on polygraph tests, Wornian did not believe any of the men had reoffended while on probation.

D.    VERDICT AND SENTENCE

The court found that Pritchett was a SVP within the meaning of section 6604 and ordered that he be committed for two years to DMH custody at Atascadero State Hospital.

Answer Ex. F at 2-9 (*People v. Pritchett*, No. A100115, slip op. (Cal. Ct. App. Nov. 18, 2003)).

II.    **Direct Appeal**

On September 13, 2002, petitioner filed a timely notice of appeal from the order of civil commitment by the Contra Costa County Superior Court.  Answer Ex. A (Clerk's Transcript) ("CT") at 179-181.  On November 18, 2003, the court of appeal affirmed the judgment.  Answer Ex. F at 14.  On February 18, 2004, the state supreme court denied the petition for review on direct appeal.  Pet. 61 (*People v. Pritchett*, No. S121527, slip op. (Cal. Feb. 18, 2004)).

**United States District Court**
For the Northern District of California

### III.    Habeas Proceedings

According to the records provided by petitioner, he submitted two petitions for habeas relief in the Contra Costa Superior Court on January 13, 2003: one allegedly challenging due process violations, and the other allegedly challenging evidentiary errors. Pet. 99-104, 109-112.  It appears that only the first petition, named the "due process" petition by petitioner, was filed by the superior court on January 16, 2003 (No. 030067-3). *Id.* at 105, 180.  According to petitioner, the petition dubbed the "evidentiary error" petition was filed on February 27, 2003 (No. 030310-7) and a duplicate copy of that petition was filed as a separate petition on March 7, 2003 (No. 030362-8).  *Id.* at 106-108, 113-116.

The superior court denied petitioner's first habeas petition, i.e., the "due process" petition, on the merits.  Pet. 126-128 (*In re Noel Pritchett on Habeas Corpus*, No. 030067-3, slip op. (Contra Costa Co. Super. Ct. Feb. 11, 2003)).  The superior court subsequently denied his second and third petitions, designated by petitioner as the "Evidence #1" and "Evidence #2" petitions, as successive petitions.  Pet. 122-124 (*In re Noel Pritchett on Habeas Corpus*, Nos. 030310-7 and 030362-8, slip op. (Contra Costa Co. Super. Ct. March 20, 2003)).

Petitioner filed a habeas petition in the court of appeal, which denied relief.  Pet. 6, 66.  Petitioner filed a habeas petition in the state supreme court, which summarily denied relief by order filed December 17, 2003.  Pet. 59.  The state supreme court denied review on the direct appeal two months thereafter on February 18, 2004.  Pet. 61.

Petitioner filed the instant petition for writ of habeas corpus on February 22, 2005. The court issued an order to show cause on October 7, 2005.  Respondent filed an answer on December 12, 2005.  Petitioner filed a traverse on January 30, 2006.  Respondent has not sought to dismiss the claims as untimely or as barred by procedural default, and the court will not consider, *sua sponte*, dismissal on those grounds.  *See Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (AEDPA statute of limitations is not jurisdictional), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc); *Francis v. Rison*, 894

1   F.2d 353, 355 (9th Cir.1990) (absent extraordinary circumstances, procedural default

2   argument is waived by failure to raise it).  The matter is submitted for decision on the

3   merits.

4                                    **STANDARD OF REVIEW**

5          A district court may not grant a petition challenging a state conviction or sentence on

6   the basis of a claim that was reviewed on the merits in state court unless the state court's

7   adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

8   unreasonable application of, clearly established Federal law, as determined by the

9   Supreme Court of the United States; or (2) resulted in a decision that was based on an

10  unreasonable determination of the facts in light of the evidence presented in the State court

11  proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

12  mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001),

13  while the second prong applies to decisions based on factual determinations, *Miller-El v.*

14  *Cockrell*, 537 U.S. 322, 340 (2003).

15         A state court decision is "contrary to" Supreme Court authority, that is, it falls under

16  the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

17  that reached by [the Supreme] Court on a question of law or if the state court decides a

18  case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

19  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

20  of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

21  identifies the governing legal principle from the Supreme Court's decisions but

22  "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

23  federal court on habeas review may not issue the writ "simply because that court concludes

24  in its independent judgment that the relevant state-court decision applied clearly

25  established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must

26  be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

27         Pursuant to Section 2254(e)(1), factual determinations by state courts are presumed

28  correct absent clear and convincing evidence to the contrary.  *Miller-El*, 537 U.S. at 340.

United States District Court

For the Northern District of California

8

1  This presumption is not altered by the fact that the finding was made by a state court of

2  appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981);

3  *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).

4  Pursuant to Section 2254(d)(2), a state court decision "based on a factual determination will

5  not be overturned on factual grounds unless objectively unreasonable in light of the

6  evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340.

7      When there is no reasoned opinion from the highest state court to consider the

8  petitioner's claims, the court looks to the last reasoned state court opinion.  *See Ylst v.*

9  *Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079,

10  n. 2 (9th Cir.2000).  Where the state court gives no reasoned explanation of its decision on

11  a petitioner's federal claim and there is no reasoned lower court decision on the claim, a

12  federal court conducts "an independent review of the record" to determine whether the

13  state court's decision was an unreasonable application of clearly established federal law.

14  *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*, 336

15  F.3d 848, 853 (9th Cir. 2003).

16                                      **DISCUSSION**

17      As grounds for habeas relief, petitioner asserts that: (1) the Sexually Violent

18  Predators Act violates due process on its face and as applied to him; and (2) the standard

19  of proof violated due process.  Neither of these claims merits habeas relief.

20  **I.    Due Process Challenge to SVPA**

21      In his first claim, petitioner raises facial and as applied due process challenges to the

22  SVPA, as well as claims alleging violations of the right to confront witnesses, right to

23  speedy trial and right to counsel secured under the Sixth Amendment, the Ex Post Facto

24  Clause and the Double Jeopardy Clause.

25          **A.    Facial Challenges**

26      Petitioner argues that the SVPA, on its face, violates due process and other

27  constitutional rights on the following grounds:

28

1)    Failure to use the Fourteenth Amendment as the standard of judgment;

2)    Allowing the state's police power to protect the public to supercede constitutional due process requirements;

3)    Use of a prejudicial label of "Sexually Violent Predator" to prejudice the fact finder into determining bad character;

4)    Use of a "screening instrument" by the Department of Corrections, rather than the Department of Mental Health, which is not capable of screening for all elements required under the SVPA;

5)    Failure by each administrative agency (CDC, BPT, DMH, DA) to give timely notice of proceedings;

6)    Failure to provide right to counsel from the inception of proceedings;

7)    Failure to allow personal appearance at administrative hearings with counsel and to confront accusers under the Sixth Amendment;

8)    Failure to provide for record examination with counsel for accuracy prior to review of these records by psychological evaluators;

9)    Allowing BPT [former Board of Prison Terms, currently the Board of Parole Hearings] to set regulations for "probable cause" hearing not authorized by law;

10)   Holding secret administrative proceeding to determine if a person is an SVP in violation of Sixth Amendment right to face accusers or challenge evidence;

11)   Failure to have independent psychological evaluators;

12)   Allowing "good faith mistake of fact or law" to override constitutional rights;

13)   Failure to provide for speedy trial or other time constraints, and the SVPA provision that CDC initiate SVP proceedings at least six months prior to release from incarceration, compared to other special proceedings which require at least thirty days prior to the end of the previous commitment, gives rise to equal protection violation;

14)   Failure to establish requirements for obtaining jurisdiction. Pet. 19-20 (the "facial" subclaims).

Petitioner presented these various due process, right to counsel, right to confront witnesses, equal protection, and speedy trial arguments in support of the five claims alleged in his state habeas petition. Pet. 180-215.  The superior court denied these claims on the following grounds:

First Claim [facial subclaims 5, 6, 8, 11]:  Petitioner claims that because counsel has not been appointed when the state institutes its evaluation process, an inmate is incapable of making an informed and intelligent decision regarding consent to be evaluated.  Petitioner further claims that because the psychologists are paid by the state they skew or even falsify statements made during the evaluation interview. Petitioner also claims that an inmate is not given notice of the evaluations and the records reviewed for the evaluation contain inaccurate information.

The court finds there to be no merit to this claim.  An inmate always retains the right to counsel if he so chooses.  Second, there are two practicing psychiatrists or psychologists who perform the evaluation for the Director of Mental Health.  Each has to protect his license in order to continue to practice.  Willful misconduct of the type petitioner describes would put that license at risk.  Given that there are two evaluators, moreover, the possibility that such misconduct will occur is negligible.  Finally, no evidence supports the claim that an inmate is not given notice of an impending evaluation; no evidence supports the claim that records reviewed for the evaluation contain inaccurate information.

Second Claim [facial subclaim 12]:  Petitioner argues that the state violates due process when it includes the language "a good faith mistake of fact or law" in section 6601(a)(2) of the SVPA.  The court declines to interpret the instant claim as a declaratory relief request where the claim is made ex parte and without notice to the attorney general.  In any event, petitioner, on this record, does not have standing to raise the issue.

Third Claim [facial subclaim 3]:  The court will not interpret this claim [challenging use of the expression "sexually violent predator" as prejudicial] as a declaratory relief request where the claim is made ex parte and without notice to the attorney general.

Fourth Claim [facial subclaim 4]: In support of this claim [challenging absence of "screening instrument" for CDC to initiate SVP procedures] petitioner submits a copy of a letter from the Chief of the California Department of Mental Health, George Bukowski, dated 2-5-01, to Norman Hubbs, an inmate at Atascadero State Prison.  This "evidence" is stale and will not support the instant claim that the CDC does not currently have a required screening instrument.  Thus the claim fails.

11

**United States District Court**
For the Northern District of California

1

2         [Fifth] Claim [facial subclaim 2]:  No evidence supports this
          claim [that police power to protect the public has been improperly used
3         to violate due process], i.e., that petitioner disagrees with the SVPA is
          not a basis for finding governmental misconduct.

4    Pet. 127-128 (*In re Pritchett*, slip op. at 2-3).

5         Under California's Sexually Violent Predators Act, a "sexually violent predator"

6    ("SVP") is defined as "a person who has been convicted of a sexually violent offense

7    against two or more victims for which he or she received a determinate sentence and who

8    has a diagnosed mental disorder that makes the person a danger to the health and safety

9    of others in that it is likely that he or she will engage in sexually violent criminal behavior."

10   Cal. Welf. & Inst. Code § 6600(a).  The SVPA establishes procedures for the Department of

11   Corrections and the Board of Prison Terms to screen a prisoner who was previously

12   convicted of certain enumerated violent sex crimes six months before being released from

13   prison to determine whether the prisoner may be a potential SVP, followed by a full

14   evaluation by two practicing psychiatrists and/or psychologists designated by the Director

15   of Mental Health.  *Id.* § 6601(a)-(d).  Upon the recommendation of the Department of

16   Mental Health, the district attorney or county counsel for the county in which the alleged

17   SVP was convicted may file a petition for civil commitment in the superior court of that

18   county.  *Id.* § 6601(h), (I).  The superior court will hold a probable cause hearing to

19   determine whether there is probable cause to believe that the prisoner is likely to engage in

20   sexually violent, predatory criminal behavior after release.  *Id.* § 6602(a).  If the superior

21   court determines that probable cause exists, the court must order the prisoner to remain in

22   custody pending a civil commitment trial.  *Id.*  *See Carty v. Nelson*, 426 F.3d 1064, 1066-67

23   (9th Cir.), *amended*, 431 F.3d 1185 (9th Cir. 2005), *cert. denied*, 547 U.S. 1130 (2006).

24        Rejecting due process challenges to the SVPA, the Ninth Circuit has held that

25   California's SVPA is similar to the Kansas civil commitment statute upheld in *Kansas v.*

26   *Hendricks*, 521 U.S. 346 (1997).  *Hubbart v. Knapp*, 379 F.3d 773, 781 (9th Cir. 2004).  In

27   *Hendricks*, the Supreme Court held that state civil commitment schemes must follow

28   "proper procedures and evidentiary standards" and require proof of dangerousness to one's

United States District Court

For the Northern District of California

1   self or to others, coupled with proof of some additional factor such as a "mental illness" or

2   "mental abnormality."  521 U.S. at 357-58.   Procedural safeguards under the SVPA

3   "include requirements that accused sexually violent predators receive diagnoses from two

4   psychiatrists or psychologists, assistance of counsel, and trial by jury on proof beyond a

5   reasonable doubt."  *Hubbart*, 379 F.3d at 781.  Petitioner has not demonstrated that the

6   SVPA falls short of these requirements or violates the right to due process, as alleged in

7   facial subclaims 1, 9 and 14.

8        Petitioner's other facial challenges to the SVPA also fail.  Petitioner has not

9   demonstrated that the assistance of counsel provision under the SVPA denies the right to

10   counsel, as alleged in facial subclaim 6.  *See Hubbart*, 379 F.3d at 781.  Furthermore,

11   facial subclaims 7 and 10 fail because the Sixth Amendment right to confront witnesses

12   does not attach in civil commitment proceedings.  *See Carty*, 426 F.3d at 1073-74.

13        The speedy trial argument in facial subclaim 13 fails because there is no Supreme

14   Court authority establishing the right to speedy trial in civil commitment proceedings.  *See*

15   *Allen v. Illinois*, 478 U.S. 364, 371-72 (1986) (full panoply of rights afforded criminal

16   defendants under the Constitution are not applicable to civil commitment proceedings).

17   Even if the right to speedy trial attached to civil commitment proceedings, petitioner has not

18   demonstrated that the timing provisions under the SVPA[1] are so long as to be

19   presumptively prejudicial to support a facial challenge to the statute, nor has he

20   demonstrated that he himself was deprived of a speedy trial.  *See Doggett v. United States*,

21   505 U.S. 647, 651-52 (1992).  Furthermore, the equal protection argument of facial

22   subclaim 13 does not merit habeas relief because there is no clearly established federal

23   law recognizing an equal protection challenge to the timing provisions of the SVPA

24   compared to other involuntary commitment statutes.  *See Hubbart*, 379 F.3d at 782

25   ───────────────────

26        [1]   The version of section 6601 that was in effect at the time of petitioner's SVPA
     proceedings provided that an SVPA petition may be filed "if the individual was in custody
27   pursuant to his or her determinate prison term, parole revocation term, or a hold [on release
     from custody for up to 45 days to conduct full evaluation] placed pursuant to Section 6601.3,
28   at the time the petition is filed."  Cal. Welf. & Inst. Code § 6601(a)(2) (effective July 22, 1999
     to Sept. 19, 2006).

**United States District Court**
For the Northern District of California

(denying equal protection challenge to SVPA in absence of "'a more lenient commitment standard and a more stringent standard of release'" than other involuntary commitment statute for mentally disordered offenders) (citation omitted); *United States v. Sahhar*, 917 F.2d 1197, 1202 (9th Cir. 1990) ("not every disparity between commitment procedures applicable to individuals accused of crimes and those applicable to the general population amounts to a denial of equal protection").

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  The claim is therefore denied.

**B.    As-Applied Challenges**

Petitioner raises the following challenges to the SVPA as applied to him:

1)    Obtaining access to confidential records without following the procedures of California Code of Civil Procedure section 2032;[2]

2)    Not giving notice of the right to have psychological interviews (which are a form of deposition by the opposition) tape recorded, thereby denying the right to obtain a recording;

3)    Failing to have the opposition's psychological evaluators to abide by the three criteria of special proceedings for commitment pursuant to *People v. Superior Court (Ghilotti)*, 27 Cal. 4th 888 (2002);[3]

4)    Failing to require a different mental state for special proceeding commitment than it did for penal commitment;

---

[2]    Section 2032, which governed civil discovery by means of physical or mental examination, was repealed and replaced by new provisions, effective July 1, 2005, to facilitate the reorganization of the state rules governing civil discovery.  *See* Cal. Code Civ. Proc. Ann. § 2016.010, Hist. and Stat. Notes (West) (California Civil Discovery Act reorganized by Stats.2004, c. 182 (A.B. 3081), §§ 22, 23).

[3]    In *Ghilotti*, the state supreme court articulated that civil commitment under the SVPA requires a finding beyond a reasonable doubt that the individual "(1) previously was convicted of qualifying violent sex crimes, (2) has a mental disorder which seriously impairs volitional control of violent sexual impulses, and (3) as a result of the disorder, presents a serious and well-founded risk of committing new acts of criminal sexual violence."  27 Cal. 4th at 924 n.15.

United States District Court

For the Northern District of California

5)    Failing to establish a non-culpable mental state for special proceeding commitment;

6)    Failing to meet the standards for proper procedures and evidentiary standards for civil commitment of dangerous sexual offenders set forth in *Kansas v. Crane*, 534 U.S. 407 (2002);

7)    Insisting that this or any respondent for SVP trial accept a mental disorder defense that was denied to him at his penal trial for the same crimes;

8)    Permitting a "personality disorder" contrary to Cal. Penal Code § 2962(a);[4]

9)    Allowing a mental state of (a) diminished capacity, (b) diminished responsibility, or (c) irresistible impulse, to qualify for commitment in violation of California law;

10)   Permitting circular logic, wherein the crime is the disorder and the disorder is the crime;

11)   Violating principles of estoppel by claiming a mental disorder exists based on the same crimes for which respondent was held culpable, and sent to prison for punishment, without a mental disorder, giving rise to estoppel of (a) silence, (b) res judicata, (c) judicial estoppel, and (d) issue preclusion;

12)   Failing to require a non-culpable mental state that meets the legal requirements of Cal. Penal Code §§ 20-29, wherein (a) the prospective committee is incapable of forming intent, *compare* Penal Code §§ 26 [defining exceptions to persons capable of committing crimes], 25(a) [abolishing defense of diminished capacity], 28(b) [disallowing defense of diminished capacity, diminished responsibility, or irresistible impulse] *with* Welfare & Institutions Code § 6600 [defining SVPs]; and (b) the prospective committee must meet the requirements of insanity, *compare* Welfare & Institutions Code § 6825 [procedures for handling mentally disordered persons charged with

---

[4]    This provision of the mentally disordered offender statutory scheme governs treatment of prisoners who have a severe mental disorder as a condition of parole.

United States District Court

For the Northern District of California

crime are provided in Penal Code § 1026] *with* Penal Code § 28(c) [limitations on evidence of mental disorder not applicable to insanity hearing pursuant to § 1026];

13)   Failing to harmonize the requirements of the SVPA with the requirements of the Penal Code;

14)   Allowing the State psychological evaluators to make findings of fact without legal training or licensing contrary to Business & Professions Code § 2960(p) [unprofessional conduct by psychologists includes functioning outside particular field of competence];

15)   Allowing the state's psychological evaluators to usurp the fact finder in determining that petitioner is an SVP;

16)   Conducting the SVP trial as a penal trial, using scienter, and destroying the nature of a special proceedings to make it penal in nature in violation of ex post facto and double jeopardy clauses.

Pet. at 20-22 (the "in practice" subclaims).

Petitioner makes several arguments based on the premise that the civil commitment proceedings under the SVPA are penal in nature, including his challenges on ex post facto and double jeopardy grounds.  California's SVP civil commitment scheme, which is similar to the Kansas statute upheld in *Hendricks*, is civil in nature and does not give rise to habeas challenges based on allegations that the civil commitment scheme is punitive.  *See Seling v. Young*, 531 U.S. 250, 261-64 (2001) (rejecting as-applied ex post facto and double jeopardy claims to Washington statute); *Carty*, 426 F.3d at 1073 ("the commitment proceedings under the SVP Act are civil, not criminal").  Thus, petitioner's arguments that the SVPA permitted evidence of mental or personality disorders inconsistent with evidence that was admissible in the criminal trials, or that his civil commitment is tantamount to punishment for his mental disorder ("in practice" subclaims 4, 5, 7, 8, 9, 10, 11, 12, 13, 16) do not state a claim for federal habeas relief.

16

**United States District Court**

For the Northern District of California

1    Petitioner also challenges the mental health evaluators' findings as failing to apply

2  the correct legal standard for civil commitment set forth by the state supreme court in

3  *Ghilotti*[5] ("in practice" subclaim 3) in that the evaluators relied on his past history to

4  determine whether he currently had a mental disorder, and did not show that the mental

5  disorder existed separate from the crime.  Pet. at 84-85.  Petitioner further contends that

6  the mental health evaluators usurped the role of the judicial fact finder by determining that

7  petitioner is an SVP ("in practice" subclaim 15).

8    Neither of these challenges establish a federal due process violation.  Petitioner has

9  not demonstrated that his civil commitment trial was conducted beyond the scope of the

10  procedures and evidentiary standards set forth by the California SVPA.  *See Rose v.

11  Mayberg*, 454 F.3d 958, 962-63 (9th Cir. 2006) (citing *Crane*, 534 U.S. at 409-10), *cert.

12  denied*, – U.S. —, 127 S.Ct. 1271 (2007); *Hubbart*, 379 F.3d at 781.  The record

13  demonstrates that the petition for civil commitment alleged that petitioner was convicted of

14  a sexually violent offense against two or more victims and that he had a diagnosed mental

15  disorder that made him a danger to others because it was likely that he will engage in

16  sexually violent criminal behavior, based on the evaluations of two mental health doctors.

17  Ans. Ex. A (Clerk's Transcript) at 1-45.  The record also shows that petitioner was

18  represented by counsel at the probable cause hearing and at trial, the superior court found

19  probable cause to believe that petitioner was likely to engage in sexually violent predatory

20  criminal behavior upon his release, the parties waived a jury trial, and the superior court

21  held a court trial and made a finding that petitioner was an SVP as defined by the SVPA.

22  Ans. Ex. A at 46, 87, 178; Ex. B (Reporter's Transcript) at 337-38.  Drs. Fricke and

23

24    [5]    In *Ghilotti*, the state supreme court held that the SVPA requires two mental health professionals to agree that petitioner "'has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody.'"

25  *Ghilotti*, 27 Cal.4th at 894 (quoting Cal. Welf. & Inst. Code § 6601(d)).  The state supreme court held that the "likely to engage" standard is met "if, because of the person's diagnosed

26  mental disorder, he or she currently presents a substantial danger - that is, a serious and well-founded risk - of criminal sexual violence unless maintained in an appropriate custodial

27  setting which offers mandatory treatment for the disorder," and further held that the "likely" standard does not require an evaluator to determine that there is a "better than even chance

28  of new criminal sexual violence."  *Id.* at 895.

United States District Court

For the Northern District of California

1    Jackson, who testified at the civil commitment trial, evaluated petitioner not only on the

2    basis of his criminal history, but also in-person clinical interviews, Static-99 analysis, and

3    review of petitioner's medical history and central file.  Ans. Ex. A at 4-26, 27-45; Ex. B at

4    101, 177.  Petitioner's SVP trial thus satisfied the due process requirements of proper

5    procedures and evidentiary standards, proof of dangerousness and proof of mental illness

6    set forth in *Hendricks.*  521 U.S. at 357-58.  *See Hubbart*, 379 F.3d at 781.

7         Petitioner argues that it is inconsistent for him to be civilly committed for a complete

8    inability to form intent due to a mental disorder when he was held criminally liable for his

9    ability to form intent, despite his mental disorder.  Pet. at 84-85.  This argument is based on

10   the premise that civil commitment under the SVPA requires the mental disorder to render

11   petitioner completely unable to control his behavior or to form intent.  The Ninth Circuit has

12   held, however, that due process does not require the factfinder to determine that petitioner

13   completely lacks control of his behavior, but only requires "'some' showing of an

14   abnormality that makes it 'difficult, if not impossible for the dangerous person to control his

15   dangerous behavior.'"  *Rose*, 454 F.3d at 963 (quoting *Brock v. Seling*, 390 F.3d 1088) (9th

16   Cir. 2004) (per curiam) (quoting *Crane*, 534 U.S. at 411)).  Thus, petitioner has not

17   demonstrated that his civil commitment proceedings violated his right to due process.

18        Petitioner's "in practice" subclaim 6 mirrors his second claim for relief, which

19   contends that his civil commitment failed to meet the procedures and evidentiary standards

20   set forth in *Crane*.  For the reasons discussed in Section II, below, this subclaim does not

21   merit habeas relief.

22        Furthermore, petitioner's contentions that he was civilly committed in violation of

23   state laws and procedures ("in practice" subclaims 1, 2, 14) allege error in the interpretation

24   or application of state law and do not give rise to federal habeas corpus relief.  *Hubbart*,

25   379 F.3d at 779-80 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

26        The state courts' denial of habeas relief was not an unreasonable application of

27   clearly established federal law.  Petitioner's due process claim is denied.

28

**United States District Court**
For the Northern District of California

1  **II.    Standard of Proof**

2      In the second claim for relief, petitioner contends that the trial court applied a

3  standard of proof that violated due process under *Kansas v. Crane*, by using the standard

4  "likely" to engage in sexually violent predatory crimes if released from custody as stated by

5  the state supreme court in *Ghilotti*, rather than a higher standard of proof.  Petitioner raised

6  this challenge to the standard of proof on direct appeal, and the Court of Appeal held that

7  there was no error:

8          Our Supreme Court has held that the defendant is "likely" to
         engage in sexually violent criminal behavior if he is found to "present[ ]
9          a substantial danger, that is, a serious and well-founded risk, of
         committing [such crimes] if released from custody."  [*People v.
10         Roberge*, 29 Cal. 4th 979, 988 (2003).]  Pritchett acknowledges that the
         trial court applied this standard.  For purposes of preserving the issue
11         for federal review and reconsideration by our Supreme Court, however,
         Pritchett asserts that due process requires that "likely" be defined as
12         "highly likely" or, at a minimum, "more likely than not."

13         We are obliged to follow the precedent of our Supreme Court.
         [Citation omitted.]  In light of *Roberge*, Pritchett has not established
14         error on this ground.

15  Answer Ex. F (*People v. Pritchett*, slip op.) at 13-14.

16      The SVPA requires a preliminary assessment or screening by two psychologists or

17  psychiatrists to determine whether the offender "is likely to engage in acts of sexual

18  violence without appropriate treatment and custody."  Cal. Welf. & Inst. Code § 6601(d).

19  *Ghilotti* rejected the contention that due process limited civil commitment of SVPs to those

20  persons who are more likely than not to reoffend, and held that the SVPA was narrowly

21  tailored to confine and treat violent sex offenders who posed a substantial danger of

22  committing similar new crimes, even if that risk could not be assessed at more than fifty

23  percent.  *Ghilotti*, 27 Cal. 4th at 924.  The state supreme court applied the *Ghilotti* standard

24  in construing the standard for the trial phase of SVP civil commitment proceedings: "a

25  person is 'likely [to] engage in sexually violent criminal behavior' if at trial the person is

26  found to present a substantial danger, that is, a serious and well-founded risk, of

27  committing such crimes if released from custody."  *People v. Roberge*, 29 Cal. 4th 979, 988

28  (2003) (quoting Welf. & Inst. Code § 6600(a) to define SVP).

United States District Court

For the Northern District of California

1    In *Kansas v. Crane*, the Supreme Court further considered the constitutionality of the

2    evidentiary standard of the Kansas SVP statute reviewed in *Hendricks*, and held that  due

3    process requires a lack of control determination for civil commitment, but did not require a

4    measure of the degree of lack of control.  *Crane*, 534 U.S. at 410.  The Supreme Court

5    made clear that "there must be proof of serious difficulty in controlling behavior," but

6    recognized that "'inability to control behavior' will not be demonstrable with mathematical

7    precision."  *Id.* at 413.  The requirement under the SVPA that the SVP have a mental

8    disorder and is "likely" to reoffend encompasses a lack of control determination: "an

9    evaluator applying this standard must conclude that the person is 'likely' to reoffend if,

10   because of a current mental disorder *which makes it difficult or impossible to restrain*

11   *violent sexual behavior*, the person presents a substantial danger, that is, a serious and

12   well-founded risk, that he or she will commit such crimes if free in the community."  *Ghilotti*,

13   27 Cal. 4th at 922 (emphasis added).  This lack of control requirement under the SVPA

14   meets the *Crane* standard for due process in civil commitment proceedings.  *See id.* at 920,

15   921 n.12, 924 n.15 (the SVPA requires for civil commitment "a current mental condition or

16   disorder that makes it difficult or impossible to control volitional behavior and predisposes

17   the person to inflict harm on himself or others").  *See also Rose*, 454 F.3d at 962-63 (civil

18   commitment under SVPA based on "mental disorder" that "affected his emotional or

19   volitional capacity" and predisposed him to commit further sex crimes was objectively

20   reasonable application of *Crane* and *Hendricks*).

21   Applying the "likely" to reoffend standard to the civil commitment trial in *Roberge*, the

22   state supreme court made clear that the burden of proof at trial was for the prosecution to

23   "show beyond a reasonable doubt that it is '*likely* that [the person] will engage in sexually

24   violent criminal behavior' if released."  *Roberge*, 29 Cal. 4th at 986 (quoting Welf. & Inst.

25   Code § 6600(a)) (italics added in original).  Under clearly established federal law, civil

26   commitment proceedings require only clear and convincing evidence, and do not require

27   evidence beyond a reasonable doubt.  *Addington v. Texas*, 441 U.S. 418, 431-33 (1979).

28

1   Thus, the burden of proof required under the SVPA is more stringent than that required for

2   due process in civil commitment proceedings.

3        The state courts' denial of this claim was neither contrary to, nor an unreasonable

4   application of, clearly established federal law.  The claim is therefore denied.

5                                    **CONCLUSION**

6        For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The

7   clerk shall terminate all pending motions, enter judgment for respondent, and close the file.

8        **IT IS SO ORDERED.**

9

10  Dated: September 9, 2008.          _____

11                                      PHYLLIS J. HAMILTON
                                        United States District Judge

12

13

14

15

16

17  G:\PRO-SE\PJH\HC.05\Pritchett764.DENY.wpd

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California